UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMERICAN HOME MORTGAGE CORP.,

                Plaintiff,

                -against-

UM SECURITIES CORP., d/b/a DUPONT
FUNDING CO., et al.,

                Defendants.
------------------------------------------------------------X

05 Civ. 2279 (RCC)

OPINION & ORDER

**RICHARD CONWAY CASEY, United States District Judge:**[1]

      Plaintiff American Home Mortgage Corp. ("Plaintiff" or "American Home"), a mortgage lender for residential real estate, brings the present action alleging civil violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1662(c) and (d), and various state causes of action, including breach of contract, fraud, and negligent misrepresentation. Defendants are mortgage broker UM Securities Corporation d/b/a Dupont Funding Co. ("Dupont Funding"), Dupont Funding's manager Marc S. Eidelkind, Dupont Funding's president Walter M. Eidelkind, and law firm / settlement agent Richard M. Levy & Associates ("Levy & Associates") (collectively, "Defendants"). Presently before the court are Defendants' motions to dismiss pursuant to Rules 12(b)(6), 12(b)(1), and 9(b) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' Rule 12(b)(6) motions to dismiss are **GRANTED**.

I.    BACKGROUND

    A.    Facts

The following facts are alleged in the amended complaint (the "Complaint").

Plaintiff is a corporation that funds mortgage loans, including those brokered by third parties.

---

[1] The Honorable Richard Conway Casey passed away on March 22, 2007. Prior to his death, Judge Casey completed a substantial portion of the work on this opinion. In his honor and on his behalf, I issue this opinion in his name.

On November 12, 2003, Plaintiff and Dupont Funding entered into an agreement entitled Mortgage Broker Loan Application Package Submission Agreement.  Between January 2004 and July 2004, pursuant to this submission agreement, Dupont Funding submitted loan application packages for at least nine different real properties (the "Subject Properties").  Plaintiff approved the application packages for the Subject Properties and provided mortgage loans accordingly.  Dupont Funding selected Levy & Associates to assist with closing the loans.

Plaintiff alleges that Defendants were engaged in a conspiracy to defraud Plaintiff by fraudulently obtaining loans for the Subject Properties.  To perpetrate this fraud, according to the complaint, Defendants engaged in the following:  misrepresenting the market values of the Subject Properties; submitting fraudulent documentation—including contracts, property appraisals, and disclosure statements containing forged signatures—to American Home; using as borrowers "straw buyers" who did not actually intend to occupy the properties; misrepresenting the amount of cash brought by the borrowers to closing; providing HUD-1 settlement statements that did not reflect the actual receipt and disbursement of funds for each relevant transaction.  Plaintiff alleges that as a result of Defendants' conduct, it "has suffered and will continue to suffer actual and consequential damages in that, among other things, the Subject Loans' values have been substantially diminished." (Compl. ¶ 16.)  Plaintiff states that based on the paperwork submitted by Defendants in connection with the loan applications, Plaintiff believed that the properties' market value exceeded the loan amount, and that it "would not have otherwise allowed these loans to fund." (Id. ¶ 135.)

The Complaint identifies nine Subject Properties, and of these, it includes descriptions of five Subject Properties.[2]  For each of these properties, American Home ordered a review appraisal 6 to 11 months after the original appraisal submitted by Defendants.  According to Plaintiffs, the review appraisals revealed inaccuracies and value overstatements in the original appraisals.

---

[2] The Complaint includes descriptions of 958 Gerard, 1455 Bushwick, 409 Chauncey, 878 East 94th, and 269 Melrose.  (Compl. ¶¶ 36 - 71.)  It does not include detailed allegations regarding the other four of nine Subject Properties:  146 Jefferson, 82 Madison, 724 Madison, and 12 Agate. The Complaint also identifies six additional properties described as "part of a larger conspiracy to defraud American Home." (Id. ¶ 18.)

Plaintiff alleges that it has foreclosed on only one of the Subject Properties, the property located at 1455 Bushwick Avenue, Brooklyn, New York ("1455 Bushwick"). A public foreclosure sale of 1455 Bushwick was held in the Supreme Court, Kings County, New York on September 22, 2005. The original January 31, 2004 appraisal submitted by Defendants valued this property at $574,500. (Id. ¶¶ 44, 46.) Plaintiffs allege that the original appraisal "materially overstated the value of 1455 Bushwick." (Id. ¶ 49.) Plaintiffs do not allege the amount by which the original appraisal allegedly overstated the value. (Id.) Nor does the Complaint state the amount of the loan provided by Plaintiff for 1455 Bushwick.

In connection with the instant suit, Plaintiff filed its initial complaint on February 18, 2005 and its amended complaint on October 25, 2005. By letters dated October 21 and 31, 2005, Defendants requested that their previously filed motions to dismiss the first complaint be applied to the amended complaint and pleadings. The Court granted that request on November 3, 2005.

The amended complaint alleges seven causes of action, including two under RICO and five under state law. Of the two RICO counts, one count alleges a substantive RICO violation, under 18 U.S.C. §§ 1962(c) and 1964(c), and one count alleges RICO conspiracy, under 18 U.S.C. §§ 1962(d) and 1964(c). Defendants have moved to dismiss all counts.

**II.    DISCUSSION**

    **A.    Standard of Review**

Defendants argue for dismissal of Plaintiff's RICO claims on the ground that Plaintiff lacks standing to sue under the RICO statute.

Pursuant to 18 U.S.C. § 1962(c), it is a violation of law to conduct or participate in the affairs of an enterprise through a pattern of racketeering. Section 1962(d) makes it a crime to conspire to commit such a violation. In addition to criminal penalties, the RICO statute provides a private civil cause of action in 18 U.S.C. § 1964(c), which states: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit,

including a reasonable attorney's fee."

The Second Circuit has made contradicting statements regarding whether RICO standing issues are jurisdictional, and thereby best considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure, or not jurisdictional, and thereby best considered under Rule 12(b)(6).  Compare Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999) ("Because loss causation is an element of standing to sue under the RICO statute, the appropriate ground of dismissal for failure to plead loss causation would seem to be the lack of subject matter jurisdiction rather than the plaintiffs' failure to state a claim. . . . Dismissal would then be pursuant to Rule 12(b)(1) rather than 12(b)(6)."), with Lerner v. Fleet Bank, N.A., 318 F.3d 113, 117 (2d Cir. 2003) ("[W]e [affirm] not under Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction, as the district court did, but rather under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. . . . RICO standing is not a jurisdictional prerequisite the absence of which would divest the district court of the original jurisdiction required to support supplemental jurisdiction.").  Most recently, the Court of Appeals endorsed the concept that RICO standing is not a jurisdictional issue but rather is part of the merits analysis of Rule 12(b)(6), see Lerner v. Fleet Bank, N.A., 318 F.3d 113, 129-130 (2d Cir. 2003), and the court described this reasoning as a holding, see id.; Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d Cir. 2006). Therefore, this Court will consider whether Plaintiff has RICO standing under the rubric of whether Plaintiff has stated a claim pursuant to 12(b)(6).[3]

Under Rule 12(b)(6), the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  The Court will not grant dismissal

---

[3] Of course, the distinction between Rules 12(b)(1) and 12(b)(6) makes little practical difference for assessing the RICO standing issues, as the standards for both rules are identical. Moore,189 F.3d at 169 n.3.  That said, there is some significance to the distinction between the rules because a dismissal under Rule 12(b)(1) divests a district court of original jurisdiction over the federal claims and leads to an automatic dismissal of pendent state claims.  A dismissal under Rule 12(b)(6) is a dismissal for failure to state a claim, not for lack of jurisdiction, and therefore a district court may, if it chooses, exercise supplemental jurisdiction over remaining state claims.  See Lerner, 318 F.3d at 128.

unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief on his claims. Id. At this stage in the litigation, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996).

### B. RICO Standing

Courts have articulated several conditions, based on the language of § 1964(c), that a civil plaintiff must meet to satisfy RICO's standing requirements. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994). "A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation,' and only when his or her 'actual loss becomes clear and definite.'" Denney, 443 F.3d at 266 (quoting First Nationwide, 27 F.3d at 767-69). In general, "RICO standing is a more rigorous matter than standing under Article III." Id.

To satisfy RICO's standing requirements, a plaintiff must demonstrate (1) a violation of 18 U.S.C. § 1962, (2) "injury to business or property," and (3) "causation of the injury by the violation." First Nationwide, 27 F.3d at 767. The injury element requires a plaintiff to show that the defendant actually injured plaintiff's business or property. 18 U.S.C. § 1964; Sedima v. Imrex Co., 473 U.S. 479, 496-97 (1985) ("A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."); First Nationwide, 27 F.3d at 768 ("The fraud defendant is not liable for all losses that may occur, but only for those actually suffered."). With regard to the causation element, a plaintiff must allege that the defendant's RICO violations proximately caused plaintiff's injury, "i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." First Nationwide, 27 F.3d at 769 (internal citations removed). It is not enough to show that the defendants' actions were a but-for cause; a plaintiff must show that the illicit actions were a proximate cause of its injury. Id.; see also Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 266 (1992) (holding that § 1964(c) includes a proximate cause requirement).

In First Nationwide v. Gelt Funding Corp., the Second Circuit considered the RICO claims of a bank that alleged a mortgage broker had fraudulently induced the bank to provide mortgage loans. The Court of Appeals held that, with regard to loans that the bank had not yet foreclosed, the bank's claims were "not ripe for adjudication because it [was] uncertain whether [the bank would] sustain any injury cognizable under RICO," and with regard to those loans that had been foreclosed, "the complaint [did] not adequately allege proximate cause."  First Nationwide, 27 F.3d at 767. Where a defendant allegedly used fraud to obtain a loan, the Court explained, "any amounts paid on the debt reduce the amount the plaintiff can claim as damages resulting from the fraud" because the defendant is liable only for those losses actually suffered by the plaintiff.  Id.  The plaintiff's injuries remain unknown and unknowable, therefore, until "it is finally determined whether the collateral is insufficient to make the plaintiff whole, and if so, by how much."  Id.  Thus, a plaintiff is unable to show injury, and therefore lacks standing under RICO, based on loans that have not yet been finally foreclosed.  Id.

Here, as in First Nationwide, Plaintiff does not have RICO standing to assert claims based on the unforeclosed loans and properties.[4]  See id.  Plaintiff may not maintain a RICO action based on the "novel theory that [the lender] was damaged simply by being undersecured when, with respect to those loans which had not yet foreclosed, the actual [monetary] damages it will suffer, if any," have not been determined.  Id.  Plaintiff asserts, however, that its lost opportunities to sell the unforeclosed loans on the secondary market, which it argues resulted from the alleged fraud, does constitute an ascertainable loss. While this might be true in theory, Plaintiff has not provided any facts that would allow the Court to assess such losses. And certainly Plaintiff has not shown a "clear and definite" injury arising from resaleability (or the lack thereof) of the loans on the secondary

---

[4] Tellingly, in the factual background section of its memorandum of law, Plaintiff explains how defendants allegedly benefitted from the "criminal enterprise by virtue of the increased business generated," but Plaintiff does not describe any injury that it experienced. (Pl's Mem. Opp. Dupont Funding Mot. at 6.)

mortgage market.[5]  See Denney, 443 F.3d at 266 (no clear and definite injury where extent of damage unknown); cf. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding that "injury in the form of lost business commissions . . . is too speculative to confer standing because [plaintiff] only alleges that he would have lost commissions in the future, and not that he has lost any yet"); Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 521 (S.D.N.Y. 1997) (stating that § 1964(c) "requires a showing of some actual, out-of-pocket financial loss").

Nor does Plaintiff have standing to assert a RICO claim as to the one foreclosed loan for 1455 Bushwick.  Plaintiff has not alleged the loan amount for the 1455 Bushwick property, the sum by which Defendants overstated the property value, or the amount of the loan—if any—that was unrecoverable through foreclosure.  That is to say, despite alleging that it has foreclosed on the 1455 Bushwick property, Plaintiff has failed to allege a definite loss with respect to the loan.  Plaintiff has not established the "clear and definite" injury necessary for RICO standing.  See Denney, 443 F.3d at 266.

Further, Plaintiff has not adequately alleged that the purported fraud was the proximate cause of any loss sustained in connection with its loan foreclosure for the 1455 Bushwick property.  In evaluating the proximate cause requirement with regard to a fraudulently induced loan, courts consider a number of factors such as "the magnitude of the misrepresentations, the amount of time between the loan transaction and the loss, and the certainty with which the loss can be attributed to defendant's conduct."  First Nationwide, 27 F. 3d at 770.  Here, the Court is not able to evaluate these factors because the Complaint provides no facts that would allow the Court to assess the extent of the misrepresentations or the amount of the loss.  Simply put, Plaintiff has not "allege[d] loss causation with sufficient particularity such that [the Court] can determine whether the factual basis for its claim, if proven, could support an inference of proximate cause."  See First Nationwide, 27 F.3d at 770.

---

[5] Likewise, Plaintiff's arguments regarding the expenses of servicing defaulted loans and the legal fees it faces are unavailing.

In sum, Plaintiff has not sufficiently alleged injury or proximate cause and therefore lacks RICO standing. Accordingly, Plaintiff has failed to state a claim under Rule 12(b)(6).[6]

### C. Plaintiff's State Law Claims

In addition to its RICO claims, Plaintiff alleges various state-law claims, including, inter alia, breach of contract, fraud, and negligent misrepresentation. (Compl. ¶¶ 146-193.) Because the Court is dismissing Plaintiff's federal law RICO claims and because the remaining claims concern only state law, there is no longer any independent basis for federal jurisdiction in this action. The Court declines to exercise supplemental jurisdiction over the remaining claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction."); Lerner, 318 F.3d at 130 (explaining that a lack of RICO standing "does not divest the district court of original jurisdiction" but that "[i]n most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage").

### III. CONCLUSION

Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is **GRANTED**. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

So Ordered: New York, New York
April 9, 2007

*Loretta A. Preska*
Loretta A. Preska, U.S.D.J.
on behalf of the Hon. Richard Conway Casey

---

[6] Having dismissed Plaintiff's RICO claims under Rule 12(b)(6), it is unnecessary for the Court to consider the 12(b)(1) or 9(b) motions.